May it please the court. Good afternoon your honors. Before you we've raised several issues. The most important issue I believe of which is the facial constitutionality of BISD's policy. The district court here held that it was not facially unconstitutional based on an analysis to a right to education under the U.S. Constitution. What's the policy again just so we're clear? The policy I think in the district court's language is the assignment of level one educational aids to severely disabled students for one-on-one care including accompanying those students to the bathroom. So level one aid as opposed to what? As opposed to our argument is level three based on the Texas Administrative Code but the the TEA's educational materials that that we have in the record I think is at least a level two stretching their reasoning about it. So in your view to the level one part of this violates the Texas Educational Code? Yes your honor. Okay so I get that and we could discuss that but but how do you jump from there to that it facially violates the Constitution? That's where the difficulty for me is. I got two aspects to that. One would be to the due process right and one to the equal protection right. As to due process the this policy affirmatively or allows or compels in the language of Edwards violations to due process by systematically putting some of the most vulnerable students in the district in the care of aids that are not licensed or trained to be providing the care that they're assigned to. Why is the difference between a level one and level three aid of constitutional significance? That's what I'm getting at. I'm sure there's there differences that you can tell me about but why is it of constitutional significance? I think it comes from the scope of practice authorized for those levels of aids and I think we characterize the level one as almost clerical duties. I can't remember exactly all the language but if you read the statute they're allowed to do like attendance help get materials passed out to the students and things that do not involve I don't think the word individual even appears in the level one area. Are you telling me that a level one aid is clearly not authorized just to take someone to the bathroom like is one of the incidents in this case? Yes but I would I would like to just clarify that if for if he was taken by like a level three aid and a level one aid that would be okay but I think to answer specifically your question that if a level one only was assigned to do that yes that that would involve a violation because because the level two and level three are given the authority to interact directly with the students which and will also involve physical interaction with the students like diapering them taking them to the toilet which in in two cases two different instances with our client and resulted in an injury and and BISD's expert also said that in order to be physical therapy they would have to have been trained by a physical therapist and so we have a letter I know that was put in evidence from one of the coaches coach Shirley to Miguel Cordova and she was asking during one instance where he was in the playground with his aid is this this is this person even trained to do physical therapy on JC because when I see the aid grab him he looks like JC's about to break and that it looks like the aid touches him like that most days so aside from the actual severe physical harm he suffered he suffers mentally when he's not being cared for appropriately by these aids and I think as far as the I understand that this happened to to JC and and the facts of this case are very bad and I I have every sympathy for JC but the issue for me is why is the difference why is why is when you say it's facially unconstitutional to have this policy level one versus level three I ask myself okay where in the Constitution do I look for to know that I mean that's that that's it just seems it seems counterintuitive to me that that that is a distinction of constitutional significance well you are I don't get that you think it violates the Texas law yes regulation I I might even suppose then that even if he was in the right factual scenario that even if he had the right level aid that he could still have been harmed in a in a way that does violate the Constitution I think we're not arguing so much that just because he was a level one and only because of that that it is facially unconstitutional it is because of the other facts that that exist in our case that he his aid what not only already had broken his teeth once before but that Miguel Cordova testified that that aid was not remediated after that and that they kept that same aid with him and so because he's actually suffered bodily harm based on the types of job assignments that are reserved only for level two and three aids that it facially violates the Constitution there the because they are inevitably going to be in situations where they have to physically maneuver or handle or care for these students which could since we're on the moving force analysis and just facial constitutionality could lead to a bodily injury such that his right to due process is violated as recognized under Beaumont well since you mentioned moving force let I guess what if we assumed that the policy is well I don't know if we assume the policy is unconstitutional it still has to be moving force under Monell no your honor if the false if the policy is facially unconstitutional it satisfies a moving force all right so let's so let's then let's assume that it's it is facially constitutional but then you could still win if you show that the policy is the moving force behind the violation so to talk about that okay so as to like a direct moving force analysis we can we can satisfy that element with the facial constitutionality we can also satisfy it with a direct analysis or an analysis of a failure to train and supervise so that moving force element can be met directly we think by showing the due process and equal protection violations that that will come from the neck that that policy first as to due process I think the Hernandez case helps us see that not only is there no specific type of harm required but that we also have this case law that also must be meeting a legitimate state goal and maintaining an atmosphere conducive to learning so as we begin the analysis before we even get to the types of notice that the board had and and the types of injuries that occurred that we have to look at whether there's a legitimate state goal in maintaining an atmosphere conducive to learning with this policy and I don't think there is one I don't think the ISD has articulated one so I think there as to the moving force element it would be already in our favor because they can't show that there was a legitimate basis for maintaining an atmosphere conducive force had to do with causation right yes your honor so as to causation we like beyond even beyond that assuming maybe there is a legitimate reason for the state to be there for BSD to be doing this we've got audit from 2009 and 2014 but is some of the earliest temporal evidence that we have that the board had direct knowledge that their staff was not able to manage the certifications properly that there was due process violations resulting in a red flags in the language of its own audit and the gross negligence of students with special needs over over many years and so that's where it begins and so our once our client gets injured in the timeline our our expert art rundown also was able to show that these these these types of incidents are reported to the board so we can show that the board was constantly on notice of these kinds of issues with their licensing and that they were causing due process violations and in our up to our client finally being injured in 2016 when it has tooth broken and then again Miguel Cordova and and says that they kept him on they kept a Victor Villarreal on the on our clients as his one-to-one aid despite having broken his tooth despite knowing that there was no remedial training of him and despite his his knowledge that are the aid lied about what happened it which is a major issue that we have with the district courts ruling as to that injury and what transpired in the bathroom I know it is difficult to determine factually what happened in the bathroom but we don't think that is all that matters we think the amount of incidents going back so many years and all these other circumstantial factors show more of the moving force coming through and specifically with how he lied about it I would first point out that the district court relied on hearsay contradicted by its own declarant to the extent that Carlos Guerra is the one that testified that Victor Villarreal was the one that said it was an accident and so if he testifies that the aid said it was an accident but then also testifies that he didn't believe the aid it seems to be a credibility determination not only about our or their witness but about what Villarreal said was an accident. Why didn't you non-suit Mr. Villarreal? Well we tried to serve him initially and we served the wrong Victor Villarreal at first and then we got him and he disappeared after we served him. I know he was from Mexico I'm not sure if he's ever come back to the States but we weren't able to find him after we served him and so we just we eventually just non-suited him. And but you didn't bring any suits under state law of any kind? No your honor. It's just this one federal claim? Yeah well I mean we bring the moving force I mean sorry 1983 claims. Sorry one yeah. ADA also. Right. But yes your honor. Federal law claims. Yes your honor federal claims only is what we brought. What is your best argument that this violates the TEA provision? I would rest on the district courts analysis of that but the fact that you mean the the administrative code? Yes. Yes your honor. I would rest on the district courts analysis of that really. We're not appealing that. We think that that that was a correct analysis. He assumes it but I'm I guess what I'm looking at is I'm looking at the text of it and I don't see I mean there's nothing in state law that says that level one aides can't take people to the restroom is there? That's correct your honor. I don't think that that's the case. I think the district court put it well is that it's a level one aides being in one-to-one assignments with severely disabled students including accompanying those students to the bathroom. So there's nothing about the restroom that's the problem? Excuse me? The restroom there's nothing specific about that it would if a level one aide walking a severely disabled student down the hall or sitting with a disabled student in a classroom? Well I think that that would be I think you would at least so to clarify a little bit more there to BISD's expert Dr. Garcia said that the proper way to do that is with two people first of all so two people should have taken them but the restroom yes your honor but what I'm asking is is there something specific about like nothing in this regulations has anything to me or the administrative codes is anything to me about restrooms and so I'm trying to figure out the nature of your argument. I think it would come from the use of the word individual in those that the level one aide doesn't have their the authority for themselves in their scope of practice to individually care for a student like that. So a level one aide could not walk the student down say to the playground? I think to the playground I think would be okay because they're not going to be involved in any kind of toileting or presumably not any type of toileting or diapering at the playground but if they were going to the bathroom that they need at least one level three aide and another person it's their expert says that we they should have had two people take JC to the bathroom and so one of them at least would have had to have been a level three aide. So a level one aide can one on one walk the student down the hall? I I don't I don't think. But can walk a student to the I just want to I'm not I'm not trying to trick you I'm just trying to make sure I understand it so you can if you're a level one aide one on one walk the student to the playground that's okay. I think it depends a little bit on the on the nature of the disability of the student though your honor I think the the district court for example is a language severely disabled student so if level one is not assigned as a one-to-one aide for a less disabled student certainly a level one aide could take them to the bathroom even probably on their own. I'm just trying to ask you about your particular client just I'm at JC so okay a level one aide could walk JC to the playground? I think your honor I find it I mean I think depending on the nature of what the student what JC would have been going to the playground for if he's just going there to play I think he can do that under the supervision of his teacher which I think is what's in the regulation and assuming that he's not going to do anything there maybe I should say like this the assuming he's not going to do anything that is within the scope of practice of a level three aide so if if if he's able to take if he's able to take a student down the hallway it kind of would seem why would he be able to not be able to also take them to the bathroom too if I think maybe you might be going there. I'm just trying to understand the nature of I mean it seems to me that the linchpin of your arguments you have to have a violation of state law and we can we can get into whether into what extent that's going to be sufficient for you maybe not all state law violations violate the substantive due process clause like there's any number of other issues with your argument but at the foundation I take your principal point to be this was a violation of state law it was irrational it served no purpose and therefore it violates substantive due process. Your honor I do we do rely on it but I don't think it's just that just alone the violation of state law and I think one way I would also just one other thing I would mention too is as to like our failure and train failure to train and supervise analyses we don't even really need to bring up that they're they're not licensed properly they for example there's no evidence in the record that this aide was trained by a physical therapist which was again their expert testified that aides need to be trained by a physical and occupational therapist in order to implement physical and occupational therapy from the students at EP so even if he was properly licensed if he's not trained to implement the kind of therapy that that their expert says that he needs to be trained by then he's not going to be trained and that would still satisfy the moving force element of our claim so I do understand that the emphasis on the violation of state law has to do I think a little more with our facial constitutionality argument and the more direct moving force analysis but again for example I think we excuse me I apologize okay you've reserved five minutes for rebuttal mr. Campbell thank you judge ho and may it please the court let me start to Joel them with where where you ended which is what is the purpose of this administrative regulation and let me first be clear because I think there's been some misstatements about this this is not a statute it's not in the Texas Education Code the authorizing provision in the Education Code is in chapter 22 which has to do with the State Board of Education certification of teachers as a result of that statute the Texas Education Agency adopted 230 in the administrative code which has to do with certification teachers and the provision we're looking at educational aides educational aides serve a lot of different functions in school districts and for example in Brownsville ISD there are over 5,000 special education students the school you know they need differing levels of support some like this student need help diapering themselves feeding a lot of support some need minimal support but aides are instrumental on that but educational aides obviously apply outside that context it may just be in a first grade classroom to walk a student to the bathroom if she needs to go so when you look at the provisions in the administrative regulation the TA announced it's focused on curriculum and teaching because the concern is you don't want someone who just has a high school diploma teaching students you see that not only in the text of the of the regulation you also see it in the requirements of a level 1 aid to become a level 3 aid as opposed to a level 1 aid there's no requirement for any kind of training to be a physical therapist there's no training whatsoever the only difference in the regulation between a level 1 aid and a level 3 aid is that a level 3 aid either has 30 hours of college credit or has three years of experience as a level 1 or level 2 aid importantly is the is the district court recognized in this case the Mr. Villarreal had a associate's degree in social work and had a bachelor's degree in special education so the only reason that he was a level 1 aid and a level 3 aid is frankly because he just didn't fill out the application and pay the fee you also see that in the regulation that's all it takes to be elevated from a level 1 to a level 3 aid nothing else now all that being said Judge Oldham I really think that that this I know you said it's the linchpin of the argument I do think that it is kind of a threshold issue for plaintiffs in this case really I think it's a red herring in the district court's decision of course as you pointed out the district court did not hold that Brownsville ISD violated this regulation the magistrate judge had found that we objected strenuously because it's not uncommon in school districts to use aids for things like walking a student to the playground walking to the bathroom for a student like JC there's no reason you need 30 hours of college credit to help him eat his his peas at lunch because of the need that school districts have for educational aids it's not uncommon for them to use level 1 level 2 level 3 whatever's available and of course consistent with the students individualized education plan or IEP under IDEA now in in this case there were concerns about whether the IP was being followed as the court knows those were all resolved in 2017 as a result of due process complaint that was resolved between the parties this lawsuit fall this compensatory damages only and that's why we're here now for this compensatory damages claim the reason I say that I think that this this whole argument about the level 1 versus level 3 aid is a red herring is the district court cited Stern v. Tarrant County appraisal district this court's decision where the court explained that you can't use state law violations to satisfy constitutional injury and at this point the only thing that's left that's necessary is some sort of federal law constitutional claim for either their 1983 claim or their ADA 504 claim and all through the briefing and today I've never heard a response to the Stern v. Tarrant County case where this court said the reason that you can't use a state law violation to satisfy constitutional injury is it would transmogrify state law into the there's some good discussion in that case about the problems that that that could arise in the future if the court were to do that so there are a lot of ways that the court could resolve this case it's late I know that you've already had two arguments so let me just give you what I think is the easiest way for the court to resolve this case and to do that let me do two things let me first point out the argument that I think is worth following and also clarify a fact in the record that I don't think is entirely clear from the briefing that's important for the court to realize so first as for the argument on the 1983 claim the district court really gave this court the district court gave this court at least two different ways to resolve it either causation or is there a constitutional injury at all because of course there has to be a policy adopted by the board that that is that causes some sort of constitutional injury and what I haven't heard today and really didn't see addressed by plaintiffs in the briefing is the question of what is the constitutional injury they've tried to allege to the problem with the bodily integrity claim and maybe this is the elephant in the room is that as as sympathetic as JC is in this case the reality is that sovereign immunity governmental immunity bars what would be the obvious claim to assert in this case a negligence claim because it bars that claim this case I think for the past seven years has been a case in search of some kind of legal theory to support it and we bounced around between alleging that the school district is abusing kids to saying that it's this policy to today hearing that somehow there should have been training by a physical therapist when the reality is that everyone agrees that the best that we know of what happened in the bathroom when the aide after initially lying for which the aide was asked to resign and essentially resigned in lieu of termination after initially lying and saying that he didn't know what happened he admitted that he slipped and fell in the bathroom grabbed that the student as they went down and unfortunately the student was injured the school district did an investigation of that that's the best explanation we've been able to figure out as to what happened and really you know although there's been a lot of back and forth about whether that's what really happened I don't know that it would be any better for plaintiff if it was something else for example there's been some kind of insinuation I think in the briefing that maybe it wasn't negligence maybe this was something he did intentionally well if that was the case that might help them on the constitutional injury because as this court knows a negligent injury can't support a bodily integrity claim on the Constitution might help them there but that would be a claim against via real who they chose to in this case and dismiss their claims against it wouldn't support a 1983 claim under Monell against the school board so legally I think the easiest way for the court to resolve this obviously the causation is one way to resolve it but frankly I think the easiest way for the court to resolve this would be to flip ahead to the last two points the district court made under the 1983 claim and just say there's really no equal protection or bodily integrity claim in this case and then for the ADA and 504 claim the district court obviously was that easier why would a bodily integrity holding be easier than moving force so bodily to you do have bad injuries here yes so I think I say it's easier only because you really don't even have to address the the facial unconstitutional claim you don't have to address the failure to train claims separately from because it seems like the district court was was unclear about whether they were saying that there was some sort of policy that have been adopted to use level 1 not level 3 aids or maybe it was a failure to train claim and either way the district court address both so I mean I think the district court's analysis is sound and you could do it that way and first address whether it's facially unconstitutional and then go through moving force for the for the alleged policy and then you know separately address the policy as I understand it the putative policy is level 1 versus level 3 right in and they have some statistics to back that up okay so that's the putative policy but what is your argument so the new moving force we haven't even talked about the standard for moving force which is quite high what would be what what is your response to the idea that well that if they hadn't followed that policy then this injury wouldn't happen right so it is a high standard that obviously helps helps my side of the case and so but I don't know that we need it in this case because frankly I don't know what the difference would be there's real really never been an explanation as to why it would make a difference whether it was a level 3 or level 1 aid in the bathroom especially given the fact that in this case mr. VRL met all the requirements in statute of being a level 3 aid except that he hadn't submitted an application to TEA to have designated as level 3 aid but I think there's one other anything in a level 1 versus level 3 categorization that speaks to the propensity to prevent injuries to to severely disabled students there's not and that's exactly our point judge Duncan is that the point of the of the regulation to the extent even matters is focused on curriculum and teaching in the classroom and there's nothing in that regulation that says anything about general safety of students otherwise I mean there are other provisions of the education code that require background checks and other things to protect student safety but the other problem I think with addressing that claim instead of just cutting to the chase and jumping the constitutional claim is there is this assumption that this is a policy and there's really nothing in the record to show that this was a policy adopted by the board my friends on the other side point to this 2009 audit frankly because most of the focus in this case has been on the legal arguments there hasn't been a lot of discussion about that audit but before you go down the road of talking about saying anything in the opinion about a policy that was adopted go to page I think it's 429 of the record and read that audit because there is nothing in that audit that says anything about level one versus level three aids absolutely nothing the three parts of that audit that they point to the first one recognizes that there's there's not a high enough number of LSSP's licensed specialist in school psychology to address concerns about diagnosing kids which is always a problem in special ed is the child find and and being able to diagnose what's going on with with the kiddos so that's the first finding that you'll see I think it's early in that report it's finding one finding three doesn't have anything to do with certification of aids it has to do a certification of mid management specialist who can supervise other employees and it's it's just a sentence under finding three again in that report that addresses that and the last finding that they point to in saying that there was some kind of notice to the board about this it is a note that the legal fees for for due process claims were or too high this was before my firm was representing the district so that's the concern that's brought that the product there and turn from there to the next exhibit it's on four four hundred and fifty nine of the record which is in 2014 there was a follow-up to that audit to go through and there's an attachment that goes through all of those complaints and says they've been addressed so there is nothing in that audit or in the record indicating that this policy was ever promulgated by the board brought to the board or approved by the board so that's an another problem I think there is a pretty serious causation issue and that it's not clear that would make any difference whether it's a level three or level one aid claim but there's even a question as to what the policy was because in a 1983 context of course it has to be the board's policy this court said that I think more times than I can count on the the ADA and 504 claim that's left the district court resolved that by just saying because this is compensatory damages and they're getting money damages you need deliberate indifference and again you don't see that in this case I mean I've already talked about the audit I think if you go back to that audit again you'll see that this was not something that was on the board's radar presented to the board no one was even thinking about this at that time or sense you've also heard today and you've seen in the briefing that this student unfortunately had another incident where his chip was to chip sorry tooth was chipped sorry where his tooth was chipped and that was by the same aid but no one at the time wanted this aid replaced in fact you know that from the plaintiff's own testimony I mean the school district investigated it there was no remediation plan that in district court pointing this out in opinion no remediation plan because there didn't appear to be any need for remediation plan you can look at I think it's I think it's on page 16 50 of the record where his super via real supervisor at the time said I talked to him our plan was to monitor him more closely when he's using the sink because apparently what happened is he fell in and chipped a tooth on the sink there was no deliberate indifference there was a discussion with the mother she told the school district I think that my son likes this aid I want him to continue no one at the time had any concerns about it obviously this would be a different case if at the time the mother has said had said I want a different accommodation I want you to get a nurse with my student or a level three aid or something along those lines that just didn't happen this tooth incident was was an accident everyone agree it was an accident and everyone moved moved forward from it so for for both you know for both of those reasons I think you looking through the record you really can't find any evidence of deliberate indifference and then also we pointed out in our briefing that because we're talking about an 88 or 504 claim I mean all we're trying to do with this aid frankly is to make sure that this student can participate in school this was a 21 year old student who obviously has severe issues in life but he was part of our program to try to give him the best education that he could the best school experience that he could until he aged out of the system and so one way that the school district did that was by giving him an aid to go with him to lunch and feed him to walk him to the bathroom to help diaper him when he needed that I mean in the briefing that there is the assertion that somehow Brownsville ISD had to keep the trash policy and frankly I think that's a little bit inappropriate to say about these aides that are doing this kind of work day in and day out so that is one reason obviously the second reason we put it on the briefing on the 88 504 is that there was no requested accommodation that the school district denied all that happened on the 8 on the in this case is that the district did its best to try to provide this student with an education in a very difficult circumstance unfortunately a student was injured and under state law any negligence claims are out and because apparently they were unable to serve via real they can assert some kind of deliberate indifference claim against mr. via real based on some sort of claim if there was evidence to support it that he engaged in some sort of attack on the student as opposed to what the evidence shows which is just that it was an accident when he slipped and fell so with that said I see that I've got three minutes left but if there are no further questions I'm happy to give that time back to the court thank you thank you mr. nice you've reserved you preserve five minutes I would first like to address the idea that it was certainly an accident I think I did touch on a little bit not only based on the testimony from the aid but one thing I didn't mention that I would like to also show that this does I think present a genuine dispute of material fact is that despite the fact that the aid lied and tried to say that he slipped and pulled down our student by grabbing him by grabbing him by the arm our extra report from our doctor shows that his arm had his forearm would have had to have been twisted like a fracture that he had in his arm and I think based on some of the case law that we have looked at that there's these kinds of incidents rise to a constitutional level in cases like where teachers were implementing experimental educational techniques or sexually assaulting students and in on that spectrum of fact patterns we think that this at least as a dispute as to material fact that it falls on that end of the spectrum that because his arm appears to have been used like a lever to have been fractured that there's evidence from coach Shirley that she jerks him while trying to do while he's at PE I think judge Olin this may go some to your question too is that it he shouldn't be doing that even as a level 1 aid shouldn't be taking him out there to the playground and trying to jerk him or to do physical therapy out there that that's exactly where we had a problem with him out there what was at the playground and that's in coach Shirley's letter to Miguel Cordova who was the same person that left in the care of our client one other thing I would like to touch on Tuesday and this was actually briefed at the at the district court level BISD has the obligation to ensure its staff is licensed it is not the job to go make sure he's got a level 3 and he only had level 1 it is BISD's obligation under the administrative code to ensure that their staff is properly licensed to the extent they want to bring up other districts I know we touch on the presumption of regularity and under our equal protection claim and I don't have a lot of time so it rest on my brief as to that but there's Lincoln I'd like to go back to one of very first things you asked me about the facial constitutionality of it as to equal protection and I think very clearly I can maybe understand why it's is a strip more of a stretch on the due process part but very clearly under equal protection this policy says these aids are being given to this class of students and everybody else is getting licensed personnel so on its face it says these students are getting unlicensed personnel everybody else is getting them and I would say if I could track the language of district court similarly here I'd say one-to-one severely severely disabled students that have one-to-one aids and including accompanying those students to the bathroom the types of severely disabled students that require higher levels of aid certification are the class of students that are being discriminated against here because they're not being given licensed personnel which is unlike everybody else at the school at least presumably that are all have licensed staff and so I would run very quickly over to the moving force with equal protection claim to because similar to the due process analysis of whether it was arbitrary or capricious or met a legitimate state goal maintaining an atmosphere conducive to learning equal protection as if there's a rational basis to meet a legitimate state interest I think at the very lowest level obviously since JC is a disabled student that class of people has a low the lowest level of scrutiny which is rational basis but there's no rational basis to be to be doing the response to the argument that counsel made that the difference between level one and level three goes to sort of a number of hours of educational attainment so that it goes really more curriculum than to supervision well I would make one brief analogy just to us I have a nursing degree and a law degree and I need my license to practice both you just even with the degree and as to VRL specifically the name of his bachelor's degree doesn't I don't think it's summary judgment allow the inference that he has the required hours under the step under this the code to do his job just because he has a bachelor's degree that may have had some family law on it I think at least at this stage that there's an inference of rather the inference should be drawn in our favor that just because he has a bachelor's with those words and it doesn't mean that he has the hours that are required under the code I would entertain any last questions if any of the judges have one thank you thank you thank you cases submitted and we are adjourned for the day